IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ONTIVEROS,<br><br>        Plaintiff,<br><br>   v.<br><br>HAYWARD POLICE DEPARTMENT, et al.,<br><br>        Defendants. | No. C 06-02122 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

      This is an excessive force civil rights case arising from Plaintiff Eric Ontiveros' altercation with several officers from the Hayward Police Department.  Plaintiff charges Defendants Hayward Police Department and Police Officers Bryan Matthews, Michael Beal, David Dorn, Darin Nishimoto, Dave Lundgren, Jason Corsolini, Eric Mulhern, Ryan Cantrell, Scott Delbo and David Schroer with violating 42 U.S.C. § 1983.  Defendants move for summary judgment on all claims.  Plaintiff opposes the motion.  The matter was heard on April 22, 2010.  Having heard oral argument and considered all of the papers filed by the parties, the Court grants Defendants' motion in part and denies it in part.

                            BACKGROUND

      On May 20, 2004, Plaintiff's ex-wife, Chantel Ontiveros, filed a report with the Hayward Police Department stating that Plaintiff

approached her on the street at 2:00 a.m. that morning, grabbed her hair, pulled her to the ground, struck her on her left side with a knife and then used the knife to slash a tire of her car. Police[1] concluded that they had probable cause to arrest Plaintiff for the crimes of assault with a deadly weapon (Cal. Pen. Code § 245) and domestic violence (Cal. Pen. Code § 273.5). Soon after police took Chantel Ontiveros' report, they saw Plaintiff driving a gold two-door Cadillac in the area where Chantel was assaulted. The police attempted to pull Plaintiff over, but he evaded them. The police department issued a notice to "Be On Lookout For" (BOLF) Ontiveros, advising that he was carrying a large knife in a sheath on his belt.

    Officer Bryan Matthews then conducted a background check on Plaintiff's criminal history and discovered that he had two outstanding arrest warrants: one for violating his parole because he failed to meet with his parole officer (Cal. Pen. Code § 3056) and one for evading a police officer (Cal. Veh. Code § 2800.2). From the background check, Matthews also learned that Plaintiff was a self-admitted gang member. He had a long criminal history, which included convictions for carjacking, robbery, assault with a deadly weapon, resisting a peace officer, driving on a suspended license, evading a police officer and being under the influence of a controlled substance. Based on Plaintiff's criminal history and the fact that he was currently armed, the police considered him to be extremely dangerous.

---

[1] From the record presented to the Court, it is impossible to determine the names of many of the individual police officers involved in the case. Thus, at times, the Court has no choice but to refer to these officers generally as "the police."

2

With this information, the police formed an arrest team to find Plaintiff and bring him into custody.[2]  At around 2:45 p.m. the police found Plaintiff walking toward his car in the driveway of his friend's house.  According to police, after Plaintiff entered his car, Sgt. Nishimoto positioned the police car that he and Matthews were in directly behind Plaintiff's car to prevent it from leaving the driveway.

Matthews approached the driver's side of Plaintiff's car. Plaintiff's left hand was on the steering wheel and his right hand was on the gear shift lever of the steering column.  Matthews shouted for Plaintiff to get his hands up, but Plaintiff moved the gear shift lever into reverse and the vehicle began to move backwards toward Matthews' car and other police officers.  At this point, Matthews feared for his safety, so he fired several rounds from his FN 303 weapon, which utilized compressed air to fire frangible plastic bullets at Plaintiff through the open driver's-side window of Plaintiff's car.  The bullets hit Plaintiff in the upper-left-arm and shoulder area of his body and they fragmented and dispersed into smaller pieces and hit his face.

Plaintiff then released his hands from the steering wheel and gear shift lever and began to lower both hands toward his waistband.  Fearing that Plaintiff was reaching for a weapon, Matthews fired several more rounds of plastic bullets at Plaintiff. It is not clear from the evidence where these rounds struck Plaintiff's body.  Plaintiff then placed his hands above his head and Officer David Dorn pulled Plaintiff from the car.  The Court

---

[2] It is not clear from the record which officers were on the arrest team.

3

assumes that Plaintiff's car had stopped moving by this point, but it is not clear if, according to Defendants' version of the events, it stopped because Plaintiff shifted the car out of gear, or if the car hit Sgt. Nishimoto's car and then came to a stop.

After removing Plaintiff from his car, Dorn "and another HPD officer" attempted to gain control of Plaintiff's hands. Matthews Decl. ¶ 14. Plaintiff began to struggle and Dorn noticed and shouted that Plaintiff had a knife at his hip. Matthews used his knee to strike Plaintiff two times in his face and Dorn struck Plaintiff on his back.[3] This use of force subdued Plaintiff and he was then handcuffed without further struggle.

Plaintiff presents a different version of the events. Plaintiff claims that, after he entered his car in the driveway of his friend's house, he put the car in reverse and began to slowly drive backwards down the driveway. He immediately noticed a car drive up quickly behind him into the driveway and he stopped his car and kept his foot on the brake.[4] He claims that, "within seconds, eight to ten police officers with guns swarmed around [his] car." Ontiveros Decl. ¶ 4. Plaintiff remembers hearing conflicting orders from the officers.[5] One yelled, "Let me see

---

[3] The record does not indicate whether Dorn struck Plaintiff with a weapon or a part of his body.

[4] Under Plaintiff's version of events, it is not clear whether Plaintiff ever shifted his car back into parking gear. However, Defendants submitted a picture of two cars with their bumpers touching. It is not clear from the picture which car initiated the contact. It is possible these two cars are Plaintiff's and Nishimito's.

[5] To support his opposition to Defendants' summary judgment motion, Plaintiff submitted only his own two-page declaration,
(continued...)

4

your hands," another yelled, "Keep your hands on the steering wheel," and another commanded him to raise his hands. Id. ¶ 5. Plaintiff asserts that the varying commands confused and scared him. He decided not to move at all and to keep both hands on the steering wheel so that they would remain in the officers' plain sight.

Plaintiff states that, once he saw the officers, he did not move his "hands in any direction and [] did not move the steering wheel or the gear shift lever." Id. ¶ 9. He also states that he "did not attempt to accelerate or maneuver [his] car." Plaintiff asserts that at no time did he reach for a weapon, but he acknowledges that he was carrying a knife in a sheath on his belt.

Plaintiff remembers getting shot in his left arm and face and then being pulled from the car. He claims that, after being removed from the car, he was immediately handcuffed, but then shot several more times in the back, pistol-whipped several times, kneed several times, and that an officer's shoe pressed his face against the pavement. He claims that he did not act aggressively toward the police and that he "did not and could not resist arrest." Id. ¶ 12.

As a result of this incident, Plaintiff claims to have suffered many injuries, including open wounds to his arm, shoulder and back; a contusion on his eye; an abrasion on his face; and numbness in his left arm. He now suffers from a facial tic and a "weepy eye" due to pieces of loose bones below his eye. Id. ¶ 13.

---

[5](...continued)
which describes the incident in question. Plaintiff does not identify by name any of the police officers involved.

5

1 These last two injuries require corrective surgery, but Plaintiff
2 asserts that he cannot afford the procedure.

3 Plaintiff asserts that all of the officers involved in his
4 shooting and arrest violated his Fourth and Fourteenth Amendment
5 civil rights under 42 U.S.C. § 1983, by using excessive force.
6 Plaintiff also asserts a § 1983 claim against the Hayward Police
7 Department, alleging that the deprivation of his constitutional
8 rights resulted from the Department's long-standing practices or
9 customs.

## LEGAL STANDARD

11 Summary judgment is properly granted when no genuine and
12 disputed issues of material fact remain, and when, viewing the
13 evidence most favorably to the non-moving party, the movant is
14 clearly entitled to prevail as a matter of law. Fed. R. Civ. P.
15 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
16 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
17 1987).

18 The moving party bears the burden of showing that there is no
19 material factual dispute. Therefore, the court must regard as true
20 the opposing party's evidence, if supported by affidavits or other
21 evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815
22 F.2d at 1289. The court must draw all reasonable inferences in
23 favor of the party against whom summary judgment is sought.
24 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
25 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
26 1551, 1558 (9th Cir. 1991).

27 Material facts which would preclude entry of summary judgment
28 are those which, under applicable substantive law, may affect the

6

1  outcome of the case.  The substantive law will identify which facts
2  are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
3  (1986).

## DISCUSSION

I.   Individual Liability Under 42 U.S.C. § 1983

The individual Defendants maintain that the doctrine of qualified immunity shields them from liability for Plaintiffs' § 1983 claim.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

The threshold question is whether, if all factual disputes were resolved in favor of the party asserting the injury, the evidence would show the defendant's conduct violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  <u>Id.</u>  On the other hand, if a violation could be made out on the allegations, the next step is to ask whether the constitutional right at issue was clearly established.  <u>Id.</u>  The question here is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  <u>Id.</u>  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  <u>Id.</u>

Plaintiff claims that Defendants are not entitled to qualified immunity because their conduct violated the clearly established

7

Fourth Amendment right to be free from unreasonable use of force by a police officer. In "Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits." Scott v. Henrich, 39 F.3d 912, 914-15 (9th Cir. 1994) (quoting Hopkins v. Andaya, 958 F.2d 881, 885 n.3 (9th Cir. 1992)).[6] Claims of excessive force which arise in the context of an arrest, investigatory stop or other "seizure" of a person are analyzed under a reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989).

The question in an excessive force claim is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Determining whether use of force is reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting in part United States v. Place, 462 U.S. 696, 703 (1983)). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. The calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-

---

[6] The Court notes that Defendants analyzed the merits of Plaintiff's § 1983 claims separately from the issue of qualified immunity. As noted above, because the legal standard for excessive force and qualified immunity are the same, the Court focuses on the qualified immunity analysis.

8

97.  The Ninth Circuit has held that police officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable. " <u>Scott</u>, 39 F.3d at 915.

Contrary to Defendants' assertions, there are several disputed material facts that prevent entry of summary judgment on the basis of qualified immunity.  Drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could infer that he did not pose a threat to Defendants at any time during their interaction. Although police had a warrant for Plaintiff's arrest and he was considered armed and dangerous, his hands were visible to police at all times, including the time of the shooting.  Plaintiff states that he did not make any furtive gestures which could have been interpreted as reaching for a weapon or attempting to operate his car in a hazardous manner.  Plaintiff claims he was given conflicting commands not to move, to raise his hands, and to keep his hands on the steering wheel.  If that were true, Plaintiff could not be faulted for failing to raise his hands as Matthews commanded.  Under Plaintiff's version of the events, nothing he did could have reasonably precipitated Matthews shooting him.  Further, after getting shot, Plaintiff was pulled from his vehicle and he claims that Matthews shot him again and that Matthews and Dorn beat him without justification.

In sum, there is sufficient evidence that Matthews used excessive force when he fired his weapon at Plaintiff, and there is sufficient evidence that Matthews and Dorn subdued Plaintiff after he was removed from his car and may have used excessive force in doing so.  Therefore, under the reasonable inferences that can be

9

made from the version of facts presented by Plaintiff, Matthews and Dorn are not entitled to qualified immunity. The Court denies Defendants' summary judgment motion on the § 1983 claim against these two Defendants.

However, the Court grants Defendants' summary judgment on the § 1983 claim against the remaining Defendants. Plaintiff submitted no evidence placing any Defendants at the scene of the incident other than Matthews, Dorn and Nishimoto.[7] In fact, Plaintiff has submitted no evidence that any particular officer committed any particular act. The only piece of evidence Plaintiff submitted in support of his opposition to Defendants' summary judgment motion was his own two-page declaration. That declaration failed to identify any officer by name. The Court relies on Matthews' declaration, provided by Defendants, to discern that Nishimoto was present at the scene, Matthews fired the plastic bullets at Plaintiff, Dorn removed Plaintiff from Plaintiff's car and both Matthews and Dorn used force on Plaintiff to subdue him outside of his vehicle. Although Plaintiff presents evidence that Nishimoto was at the scene of the incident, there is no evidence that he used excessive force. Accordingly, the Court grants summary judgment for Defendants Beal, Lundgren, Corsolini, Mulhern, Cantrell, Delbo, Schroer and Nishimoto.

## II. Municipal Liability Under 42 U.S.C. § 1983

Plaintiff also asserts a § 1983 claim against the Hayward

---

[7] The Court notes that Defendants submitted fifteen pictures of what appear to be the scene of the shooting incident and of Plaintiff's wounds. However, these pictures are largely unhelpful to the Court because of their extremely poor quality.

10

Police Department.[8] A municipality may be liable under § 1983 when the enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right. Monell v. Dep't of Social Services, 436 U.S. 658, 663-64 (1978). Plaintiff claims that the policy in question is the County's failure to act. "To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Here, even viewing the facts in the light most favorable to Plaintiff, his Monell claim fails. Plaintiff has not presented any evidence that the Hayward Police Department had a custom or policy that amounted to deliberate indifference to situations involving the use of force. Further, Plaintiff has not created a triable issue of fact as to whether the police department was deliberately indifferent to officer training in general. Because Plaintiff has not created a triable issue of fact concerning the Hayward Police Department's § 1983 liability under Monell, the Court grants Defendants' summary judgment motion on this claim.

//

---

[8] The Court also notes that Plaintiff sued the Hayward Police Department; however, the proper municipal defendant should have been the City of Hayward.

11

CONCLUSION[9]

For the foregoing reasons, the Court grants in part and denies in part Defendants' summary judgment motion (Docket No. 44). Plaintiff's § 1983 claim against Matthews and Dorn will proceed to trial. All other claims against all other Defendants are summarily adjudicated against Plaintiff.

IT IS SO ORDERED.

Dated: 05/14/10



CLAUDIA WILKEN
United States District Judge

---

[9] Defendants also argue that Plaintiff's claims should be summarily adjudicated because his complaint does not specify any causes of action upon which relief can be granted. The Court disagrees. Plaintiff's complaint sets forth a short and plain statement of his claim showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2).

12